*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICIA CUNNINGHAM and KELLY
CORBETT,

UNPUBLISHED
October 19, 2023

Plaintiffs-Appellants,

v

No. 363159
Wayne Circuit Court
LC No. 21-003468-NO

INLAND PIPE REHABILITATION HOLDING
COMPANY, LLC,

Defendant-Appellee.

Before: K. F. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

Plaintiffs, Patricia Cunningham and Kelly Corbett, appeal as of right the trial court order granting defendant, Inland Pipe Rehabilitation Holding Company, LLC, summary disposition in this premises-liability action. Although the trial court erred in its analysis of the open and obvious doctrine under the new framework provided by *Kandil-Elsayed v F & E Oil, Inc*, ___ Mich ___; ___ NW2d ___ (2023) (Docket No. 162907), which includes a decision in *Pinsky v Kroger Co of Mich* (Docket No. 163430), summary disposition in favor of defendant was nonetheless appropriate. We affirm.

## I. FACTUAL BACKGROUND

This case arises from Cunningham falling off her electric bicycle on June 11, 2020. Cunningham and Corbett are married, and at the time lived in Detroit. Defendant was under contract with the City of Detroit to clean out the sewers. To do this, defendant connects a hire-pressure hose from a fire hydrant to a vacuum truck. That day, defendant created a work zone on eastbound Larned Street, running the hose across the eastbound lanes only. Two of the three eastbound lanes were closed, orange warning signs and traffic cones were displayed, and an orange ramp covered the hose on the one lane open for traffic to cross over it. Defendant's employees set up and took down the construction site each day. A former employee of defendant, Kelvin Fortenberry, the vacuum truck operator, testified that his coworker, Anton Bradford, was on Larned directing traffic, holding a sign that said "slow" on one side and "stop" on the other.

That morning, Cunningham left home on her electric bicycle to follow, observe, and film a Black Lives Matter protest rally. She was not wearing a helmet. She rode on westbound Larned toward the protest and saw a construction hose across the eastbound lanes. When she started traveling on the eastbound side of Larned to return home, she again saw the hose. She pulled over, parked her bike on the grassy median between the east and westbound lanes of Larned, and watched cars go over the hose for 15 to 20 minutes to determine whether she could ride her bike over it. She observed other cars driving over the hose, so she presumed it was not pressurized, and decided to ride her bike over it. Bradford testified that he was standing with his traffic control sign, yelling at Cunningham to slow down. The height discrepancy caused her to fall from her bike. Fortenberry did not see Cunningham fall, but saw her on the ground. Fortenberry and Bradford saw blood coming out of Cunningham's ear and in her hair, and Fortenberry called 911. Bradford called defendant's safety director, Robert Samonie, who arrived at the scene as Cunningham was being put into the ambulance. She was transported to the hospital, and diagnosed with a fractured skull, concussion, fractured right ear bone, fractured left elbow, and subdural and subarachnoid hemorrhages.

## II. PROCEDURAL HISTORY

Plaintiffs filed suit alleging negligence, public nuisance, and loss of consortium on behalf of Corbett. Defendant moved for summary disposition, asserting that plaintiffs' negligence claim was actually a premises-liability claim. Defendant was in possession and control of the street under its contract with the city, and caused the alleged dangerous condition. Cunningham was a licensee, and therefore defendant had no duty to protect against open and obvious dangers, namely, the hose. And there were no special aspects to preclude application of the doctrine. Defendant argued that plaintiffs did not establish facts that support that defendant caused an unreasonable interference with a common right enjoyed by the general public, i.e., public nuisance, and that Corbett's claim for loss of consortium was derivative of Cunningham's claims, and therefore failed. Lastly, defendant argued that because Cunningham failed to wear a helmet that day, she was more than 50% responsible for her injuries, and therefore could not recover noneconomic damages.

Plaintiffs responded, denying that the open and obvious doctrine applied to their claim of ordinary negligence, and moreover, defendant was not the owner or possessor of Larned Street, a public roadway. If the doctrine does apply, the exception applies because defendant created a new hazard that it knew or should have known would pose a dangerous condition. As to comparative negligence, plaintiffs asserted that was for the jury to decide.[1]

The court agreed that defendant was in possession and control of the premises because it had a contract with Detroit, and had construction equipment and workers present, and plaintiffs submitted no evidence to contradict that. The court also determined that defendant did not owe Cunningham a duty to warn of the alleged dangerous condition because it was open and obvious. Because plaintiffs failed to establish a prima facie case for premises liability, the court dismissed Count I. Because plaintiffs failed to address their claim for public nuisance in their response, the court deemed it waived and summary disposition appropriate because facts were not provided to

---

[1] Plaintiffs did not address their claim of public nuisance in their response.

support it. Corbett's claim for loss of consortium was derivative and therefore dismissed. The court concluded that the issue of comparative negligence was moot. Plaintiffs now appeal.

## III. STANDARD OF REVIEW

Defendant moved for summary disposition under MCR 2.116(C)(8) and (10). However, "because the trial court considered documentary evidence beyond the pleadings, we construe the motion as having been granted pursuant to MCR 2.116(C)(10)." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

A trial court's decision to grant or deny summary disposition is reviewed de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Id*. (quotation marks and citation omitted). "The moving party must first specifically identify the issues as to which it believes there is no genuine issue as to any material fact, and has the initial burden of supporting its position with affidavits, depositions, admissions, or other admissible documentary evidence." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475; 776 NW2d 398 (2009) (quotation marks, citations, and brackets omitted). When this burden is met, the burden shifts to the nonmoving party to establish a genuine issue of material fact for trial. *Id*. The nonmoving party may not rely on mere allegations or denials in the pleadings, but must set forth specific facts showing that a genuine issue of material fact exists. *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

## IV. ANALYSIS

The trial court erred in concluding that defendant had no duty to warn Cunningham because the hose was open and obvious; however, summary disposition under the newly-provided framework was nonetheless appropriate.

"All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed*, ___ Mich at ___; slip op at 8. "Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land." *Jahnke v Allen*, 308 Mich App 472, 474; 865 NW2d 49 (2014) (quotation marks and citation omitted). To the extent that plaintiffs argue that their claim for ordinary negligence was not, in reality, a claim for premises liability, we disagree. "[I]t is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Id*. at 475 (quotation marks and citation omitted). "[C]ourts are not bound by the labels that parties attach to their claims." *Id*. (quotation marks and citation omitted).

Liability in a premises-liability action "arises solely from the defendant's duty as an owner, possessor, or occupier of land." *Id*. (quotation marks and citation omitted). The terms "premises possessor" and "dangerous condition on the land" relate to the elements of a claim for premises

liability rather than ordinary negligence. *Id*. In the complaint, plaintiffs alleged that "defendant is the owner of the hose and through its employees caused it to be placed across Larned resulting in a dangerous and hazardous condition," and that this condition caused her to "be separated from her bike while moving and to sustain serious injuries." An allegation that the defendant created the condition does not transform the claim into one for ordinary negligence. *Id*.

The parties first dispute whether defendant was the possessor of the land where Cunningham fell for purposes of premises liability. Plaintiffs assert, as they did in the trial court, that defendant was not in possession or control of Larned Street because it is a public roadway. Defendant argues that it was in possession and control as it was under contract with the City of Detroit to clean the sewers and set up the construction site daily under that contract.

"Generally, . . . for a party to be subject to premises liability in favor of persons coming on the land, the party must possess *and* control the property at issue but not necessarily be its owner. This rule is based on the principle that a party in possession is in a position of control, and *normally* best able to prevent any harm to others" *Finazzo v Fire Equip Co*, 323 Mich App 620, 627; 918 NW2d 200 (2018). "[P]ossession and control are certainly incidents of title ownership, but these possessory rights can be 'loaned' to another, thereby conferring the duty to make the premises safe while simultaneously absolving oneself of responsibility." *Id*. at 627-628 (quotation marks and citations omitted). "[A] property possessor may 'loan' part of its 'possession and control' to another, making the other party responsible for the care of invitees with respect to that part of possession and control conferred." *Id*. at 628. This principle was set forth in 2 Restatement Torts, 2d, § 384, p 289:

> One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge. [*Finazzo*, 323 Mich App at 629.]

In *Finazzo*, this Court held that this rule applied to the defendant who was under contract and subcontract with the owner of the premises to make changes to a computer room by installing a fire suppression system. *Id*. The plaintiff, a security guard in the building, was injured when he stumbled on an electrical cable lying on the floor. *Id*. at 622-623. In this case, as a contractor for the City of Detroit to perform sewer cleaning, defendant was in possession and control of the area on Larned where it had set up a construction site and where Cunningham fell. Like the contractor in *Finazzo*, defendant was in the best position to prevent harm to others. *Id*. at 629-630. Thus, defendant met its burden of establishing facts that it was in possession and control of the area by virtue of the contract with the city. *Innovative Adult Foster Care, Inc*, 285 Mich App at 475. The burden then shifted to plaintiffs to provide evidence that created a question of fact, which they failed to do, *id*., and merely asserted that defendant could not be the possessor because Larned is a public street. This was insufficient.

In a premises-liability action, the landowner's duty to a visitor depends on the visitor's status. *Kandil-Elsayed*, ___ Mich at ___; slip op at 9. It is undisputed that Cunningham was an invitee at the time of the incident. "An 'invitee' is a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that

reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception." *Id*. at ___; slip op at 9 (quotation marks and citation omitted). Land possessors owe invitees an affirmative duty to protect—the duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land. *Id*. at ___; slip op at 9.

In *Lugo*, 464 Mich 512, the Michigan Supreme Court held that this duty did not apply to open and obvious dangers unless an exception for special aspects applied, "squarely situat[ing] the open and obvious danger doctrine in the element of duty." *Kandil-Elsayed*, ___ Mich at ___; slip op at 22. In the Supreme Court's recent ruling in *Kandil-Elsayed*, *Lugo* was overruled; the Court concluded that situating the open and obvious danger doctrine and any exceptions as part of the duty analysis ran afoul to comparative fault. *Id*. at ___; slip op at 29, 36. Thus, the Court offered a new framework for analysis.

The duty owed to invitees remains the same—the premises possessor must exercise reasonable care to protect invitees from unreasonable risk of harm caused by a dangerous condition of the land. *Id*. at ___; slip op at 39. However, "the open and obvious nature of a danger—i.e., whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection, is relevant to the defendant's breach and the plaintiff's comparative fault." *Id*. at ___; slip op at 39-40 (quotation marks and citation omitted). Analysis of the open and obvious doctrine was moved from duty to breach. *Id*. at ___; slip op at 40. The standard for assessing whether a danger is open and obvious remains objective. *Id*. at ___; slip op at 40. However, the Court also overruled the special-aspects doctrine, stating that instead of analyzing whether an obvious danger is effectively unavoidable or poses an unreasonable risk of severe harm, "the fact-finder should consider whether the possessor should anticipate the harm despite such . . . obviousness." *Id*. at ___, citing 2 Restatement Torts, 2d, § 343A, p 218 (quotation marks omitted); slip op at 43, citing 2 Restatement Torts, 2d, § 343A, p 218 (quotation marks omitted).

In *Pinsky*, the plaintiff tripped and fell over a thin cable that was strung between adjoining checkout lanes in a grocery story. *Kandil-Elsayed*, ___ Mich at ___; slip op at 46. In applying the new framework, the Court determined that the obstruction in the checkout lane constituted a dangerous condition, and that the defendant owed the plaintiff a duty to protect her from the unreasonable risk of harm caused by the dangerous obstruction in the checkout lane. *Id*. at ___; slip op at 47. Whether the defendant owes the plaintiff an actionable legal duty is a question of law that the court decides. *Id*. at ___; slip op at 9. Similar to *Pinsky*, the pressurized hose running across Larned constituted a dangerous condition, and therefore, defendant owed Cunningham a duty to protect her from any unreasonable risk of harm caused by the hose across Larned.

Moving to the element of breach, the *Kandil-Elsayed* Court determined that questions of fact existed in *Pinsky*, rendering summary disposition inappropriate. *Id*. at ___; slip op at 47. Whether a defendant breached its duty is a question of fact for the jury. *Id*. at ___; slip op at 10. The evidence did not establish how low the cable was strung between the checkout lanes, which was relevant to whether an average person with ordinary intelligence would have discovered the hazard, and whether the defendant would have anticipated the harm despite it being open and obvious. *Id*. at ___; slip op at 47-48. Thus, the Court reversed the grant of summary disposition to the defendant. *Id*. at ___; slip op at 48.

In applying the new framework, we believe that the evidence was sufficient to establish that defendant did not breach its duty to Cunningham. There is no question of fact whether it was "reasonable to expect that an average person with ordinary intelligence" would have discovered the hose across Larned "upon casual inspection," *id*. at ___ (quotation mark omitted); slip op at 47 (quotation marks omitted), as Cunningham testified that she first saw the hose traveling westbound on Larned, and again directly encountered it on her way home traveling eastbound. She specifically pulled her bike over and stopped in the grassy median for 15 to 20 minutes for the sole purpose of observing cars traverse the hose and deciding to cross it with her electric bike. Thus, she did discover the hazard upon casual inspection. Under the new framework for the exception of "whether the possessor should anticipate the harm despite such . . . obviousness," *id.* at ___, citing 2 Restatement Torts, 2d, § 343A, p 218 (quotation marks omitted); slip op at 43, citing 2 Restatement Torts, 2d, § 343A, p 218 (quotation marks omitted), the exception would not apply.[2] Bradford testified that he had been working at the same site for weeks, and had observed cars, bicycles, and scooters traverse the ramp over the hose without incident. Fortenberry testified that the ramp interlocked over the hose, and he closed down two of the three lanes so that the only lane open to travel had the hose covered by a ramp. Plaintiffs assert that the 21-second long video contradicts Bradford's testimony. The short video clearly depicts the hose covered by a ramp in the one lane open to traffic; the other details which plaintiffs claim contradict Bradford's testimony are minute and irrelevant.

Thus, even though the trial court erred in its analysis, concluding that defendant had no duty to protect Cunningham from an open and obvious danger by analyzing the open and obvious doctrine under the duty element of premises liability, which the trial court did before *Kandil-Elsayed* was decided, nonetheless, summary disposition was appropriate because there is no genuine issue of material fact under the new framework that defendant did not breach the duty owed to Cunningham to protect her from unreasonable harm where the hose was open and obvious.[3]

---

[2] The parties dispute application of the special-aspects doctrine under the previous framework. The overruling of that framework by *Kandil-Elsayed*, ___ Mich at ___; slip op at 43, renders their arguments moot and discussion thereof unnecessary.

[3] Based on plaintiffs' arguments that summary disposition was improper, they assert on appeal that Corbett's loss of consortium claim should proceed on remand. Generally, issues not raised in the statement of questions presented in a brief on appeal are not properly before this Court, *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 404; 628 NW2d 86 (2001), which plaintiffs failed to do. Nonetheless, loss of consortium is a derivative claim and recovery is contingent upon the injured spouse's entitlement to recovery. *Wesche v Mecosta Co Rd Comm*, 267 Mich App 274, 279-280; 705 NW2d 136 (2005), aff'd in part and rev'd in part on other grounds 480 Mich 75 (2008). Because plaintiffs' premises-liability claim fails, Corbett's derivative claim for loss of consortium also fails.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron